R. Shawn Oller; AZ Bar No. 019233
LITTLER MENDELSON
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
Telephone:   602.474.3600
Facsimile:   602.957.1801
E-mail:   soller@littler.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARY H. LOMBARDI, a single woman,<br><br>    Plaintiff,<br><br>v.<br><br>COPPER CANYON ACADEMY, LLC, et al.,<br><br>    Defendants. | Case No. CV 09-08146-PCT-PGR<br><br>**DEFENDANTS' MOTION TO DISMISS** |

## **MOTION**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), Defendants Copper Canyon Academy, LLC ("the Academy"), CRC Health Group, Inc. ("CRC"), Aspen Education Group, Inc. ("Aspen"), Paul Taylor, Josh White, and Anne Harmes (along with their marital communities) (collectively referred to herein as "Defendants") file this Motion to Dismiss Plaintiff Mary Lombardi's ("Plaintiff") state tort and contract law claims asserted in the Complaint because this Court does not have jurisdiction over Plaintiff's state law claims and because Plaintiff's Complaint otherwise fails to state a claim upon which relief may be granted.  This Motion is supported by the following Memorandum of Points and Authorities and the pleadings and documents contained in the Court's record, all of which are incorporated herein by reference.

LITTLER MENDELSON
A Professional Corporation
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   FACTUAL BACKGROUND

Plaintiff Mary Lombardi is a former employee of the Academy.[1]  Complaint at ¶¶ 1 and 29.  During the summer of 2008, Plaintiff and other Academy employees, as a group, presented written complaints to the Academy on behalf of their supervisor stating their belief that the Academy was violating their supervisor's rights under the Family and Medical Leave Act ("FMLA") and further complaining about alleged nepotism after a younger woman was hired to replace their supervisor.  *Id*. at ¶¶ 14, 16-19.  Plaintiff claims that after she submitted these collective complaints, the Academy, Taylor, White, and Harmes subjected her to increased scrutiny and harassment.  *Id*. at ¶ 22.  On or about December 18, 2008, Plaintiff alleges that the Academy, Taylor, and White terminated her employment with the Academy in retaliation for her complaints.  *Id*. at ¶ 29.

## II.   LEGAL ANALYSIS

### A.   The National Labor Relations Act Preempts Plaintiff's State Law Claims Because An Unfair Labor Practice Arguably Has Occurred

#### 1.   The National Labor Relations Board Has Primary And Exclusive Jurisdiction Over Claims Alleging Termination Or Retaliation For Engaging In Protected Concerted Activities

Section 7 of the NLRA provides in pertinent part:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations ... and ***to engage in other concerted activities*** for the purpose of collective bargaining or ***other mutual aid or protection*** ...

29 U.S.C. § 157 (emphasis added).  Sections 8(a)(1) and 8(a)(3) of the NLRA make it an "unfair labor practice" for an employer to terminate an employee because the employee engaged in conduct protected by Section 7 of the NLRA.  29 U.S.C. §§ 158(a)(1) and (3) (making it unfair labor practices for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7" or to discriminate against an employee "in regard to hire or tenure of employment or any term or condition of

---

[1] For purposes of this motion, all allegations of material fact are taken as true.

LITTLER MENDELSON
A Professional Corporation
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-2-

employment to encourage or discourage membership in any labor organization").

The NLRA's protections are not limited to employees who engage in union activities. Rather, the NLRA also protects employees in non-union settings who engaged in concerted activities for the purpose of "mutual aid or protection." For an activity to be "concerted" for purposes of Section 7, the conduct must appear that it was engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action in the interest of the employees. *See Mobil Exploration and Producing U.S., Inc. v. NLRB,* 200 F.3d 230, 239 (5th Cir. 1999). The activities of a single employee in enlisting the support of fellow employees in mutual aid and protection is as much concerted activity as is ordinary group activity. *NLRB v. Mike Yurosek & Son, Inc.*, 53 F.3d 261, 264 (9th Cir. 1995) ("The [NLRA] does not require that 'employees combine with one another in any particular way ...' If 'a single employee, acting alone, participates in an integral aspect of a collective process,' the activity may nonetheless be considered 'concerted' for purposes of the [NLRA].").

"Mutual aid and protection" is construed expansively by the courts to confer NLRA protection to a broad range of concerted activities, including the voicing of employee complaints in order to improve or preserve the terms and conditions of their employment. *See Eastex, Inc. v. NLRB*, 437 U.S. 556, 565 (1978). The "mutual aid or protection" clause protects employees from retaliation by their employers when they seek to improve their working conditions through resort to administrative and judicial forums. *See Mobil*, 200 F.3d at 238. "It is not necessary that the individual employee be appointed or nominated by other employees to represent their interests…[A]n employee's presentation of job-related grievances … is for the mutual aid and protection of employees." *NLRB v. Lloyd A. Fry Roofing Co. Inc. Of Del.*, 651 F.2d 442, 445 (6th Cir. 1981).

In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), the United States Supreme Court developed the *Garmon* rule of preemption under the NLRA, which mandates dismissal of any matter which even arguably is within the coverage of the NLRA. In *Garmon*, the Court held that when an activity arguably is subject to Sections 7 or 8 of the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-3-

1  NLRA, state and federal courts must defer to the exclusive competence of the National
2  Labor Relations Board ("NLRB" or the "Board") if the danger of interference with national
3  labor policy is to be averted. *Id*. at 245. Preemption under *Garmon* is intended to preclude
4  state interference with the NLRB's interpretation and enforcement of the integrated scheme
5  of regulation that the NLRA established. *Golden State Transit Corp. v. City of Los Angeles*,
6  475 U.S. 608 (1986). Thus, the *Garmon* rule mandates that the NLRB be granted exclusive
7  primary jurisdiction to review in the first instance whether an unfair labor practice has been
8  committed. *Garmon*, 359 U.S. at 244. In *International Longshoremen's Association v.
9  Davis*, 476 U.S. 380, 391 (1986), the United States Supreme Court stated that "in enacting
10 the NLRA Congress intended for the Board generally to exercise exclusive jurisdiction in
11 this area." The Court also made clear that in deciding the preemption issue:

> a court first must decide whether there is an arguable case for
> pre-emption; if there is, it must defer to the Board, and only if the
> Board decides that the conduct is not protected or prohibited may
> the court entertain the litigation.

Id. at 397.

Here, Plaintiff contends in support of each and every one of her state law claims that she was terminated in retaliation for engaging in protected concerted activities. Complaint at ¶¶ 14, 16-17, 19, 22, 23. As will be discussed in the next section, assuming, as this Court must, that all of the allegations set forth in the Complaint are true, there is no question that Plaintiff's state law claims arguably fall within the protections afforded by Sections 7 and 8 of the NLRA and are subject to the exclusive and primary jurisdiction of the NLRB. Accordingly, Plaintiff's state law claims are preempted and this Court should dismiss those claims from her Complaint.

    **2. Because Plaintiff's Allegations In Support Of Her State Law Claims, If True, "Arguably" Are An Unfair Labor Practice, Plaintiff's State Law Claims Fall Within The Exclusive And Primary Jurisdiction Of The NLRB And Should Be Dismissed**

An employer violates Sections 8(a)(1) and 8(a)(3) of the NLRA by discharging an employee because of his or her Section 7 protected concerted activities. *NLRB v.*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-4-

*Washington Aluminum Co.*, 370 U.S. 9, 16-17 (1962) (protests over lack of heat); *Lloyd A. Fry Roofing Co.*, 651 F.2d at 446 (protest over unsafe trucks); *Buscemi v. McDonnell-Douglas Corp.*, 736 F.2d 1348, 1350 (9th Cir. 1984) ("Activities to redress complaints about working conditions are 'concerted activities' protected by the [NLRA]..."). A violation of Section 8(a)(3) occurs even where the discharge is only partially motivated by the employee's actual or perceived protected concerted activities. *See Dellridge Nursing Home*, 234 NLRB 595, 603 (1978) ("If an employee is discharged for reasons even partially motivated by his protected activities, there is a violation of Section 8(a)(3) of the Act.").

Unquestionably, Plaintiff contends in her Complaint that Defendants terminated her because she and her co-workers collectively complained about alleged mistreatment in the workplace. Complaint at ¶¶ 14, 16-17, 19, 22, 23. The Board has consistently held that the NLRA protects concerted complaints about favoritism or the mistreatment of workers. *CGLM, Inc.*, 350 NLRB 974, 979 (2007) (concerns about favoritism and discrimination); *North Carolina License Plate Agency*, 346 NLRB No. 30 (2006) (concerns about favoritism and wages). Indeed, there is no question that Section 7 of the NLRA protects Plaintiff's and her co-worker's collective complaints of alleged violations of the FMLA. Specifically, in *Phillips Petroleum Co.*, 339 NLRB 916, 918 (2003), the NLRB concluded that an employee who learned about state and federal family and medical leave laws "engaged in protected concerted activity to remedy a perceived inadequacy in working conditions, i.e., the inability of employees to use sick leave for family medical emergencies." Because the employee's termination was partly motivated by his protected complaints, the NLRB held that the employer violated the NLRA. *Id.* at 919.

In sum, if Plaintiff is able to show that Defendants believed that she was engaging in protected concerted activities, and that Defendants terminated her in whole or in part based on that perception, Plaintiff would prove that Defendants had committed an unfair labor practice in violation of Sections 8(a)(1) and 8(a)(3) of the NLRA. *See Buscemi*, 736 F.2d at 1350; *Phillips Petroleum Co.*, 339 NLRB at 918; *Dellridge Nursing Home*, 234 NLRB at 603. This is precisely the type of factual scenario that the United States Supreme Court in

LITTLER MENDELSON
A Professional Corporation
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-5-

1  *Garmon* envisioned should fall squarely on the shoulders of the NLRB, not the federal or
2  state courts. Thus, each and every state law claim set forth in Plaintiff's Complaint is
3  preempted and subject to complete dismissal. *Buscemi*, 736 F.2d at 1350-52 (affirming
4  dismissal of plaintiff's retaliation, wrongful discharge, and intentional infliction of emotional
5  distress claims as being preempted by the NLRA).

**B.    Plaintiff's Negligent Infliction Of Emotional Distress Claim Must Be Dismissed Because Arizona's Workers' Compensation Statute Provides Plaintiff With An Exclusive Remedy For This Claim**

In most cases, workers' compensation is an employee's exclusive remedy against the employer for work-related injuries. *See* A.R.S. § 23-1022(A); *Bonner v. Minico, Inc.*, 159 Ariz. 246 (1988). Indeed, the workers' compensation statute provides that "[t]he right to recover compensation [under the statute] . . . for injuries sustained by an employee . . . is the exclusive remedy against the employer . . . ." A.R.S. § 23-1022(A). The statute further provides that an employer ". . . shall not be liable for damages at common law or by statute" for injuries to employees. A.R.S. § 23-906(A). As a result of these provisions, a court generally lacks subject matter jurisdiction in a tort action brought by an employee who has been injured in the course of employment. *See Bonner*, supra; *Switchenberg v. Brimer*, 171 Ariz. 77, 828 P.2d 1218 (Ct. App. 1991). Article XVIII, § 8 of the Arizona Constitution creates a limited exception to the exclusive remedy provision for injuries that are the result of acts of the employer done "knowingly and purposely with the direct object of injuring another and the act indicates a willful disregard of the life, limb or bodily safety of employees." A.R.S. § 23-1022 implements this exception.

Arizona courts have held that where a plaintiff alleges negligent conduct against her employer, she is restricted to the remedy provided by the workers' compensation statutes, which provide the exclusive remedy for workers injured on the job. *See Irwin Investors, Inc. v. Superior Court*, 166 Ariz. 113, 800 P.2d 979 (Ct. App. 1990) (***negligent*** hiring, ***negligent*** supervision, and ***negligent*** retention claims dismissed as a matter of law; barred by exclusive remedy provisions of the Workers' Compensation Act); *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580 (1987) (***intentional*** torts of assault and battery and ***intentional*** infliction of

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-6-

emotional distress not barred by Workers' Compensation Act).  Accordingly, Plaintiff's allegation in her Eighth Claim for Relief that Defendants' *negligent* conduct caused her emotional distress should be dismissed as a matter of law because her remedy, if any, for this claim is through the exclusivity provisions of the Arizona Workers' Compensation Act.

### C. Plaintiff's Claims For Wrongful Discharge Must Be Dismissed Because Plaintiff Has Not Alleged Facts To Support Violation Of A State Statute Or Identified A Sound Public Policy To Support The Claims

Plaintiff's Second Claim for Relief asserts a claim for wrongful discharge in violation of A.R.S. § 23-1501(3)(b) alleging that she was terminated for "[o]pposing violations of the FMLA" and because of her age.  Complaint at ¶ 31.  Plaintiff's Third Claim for Relief asserts a claim for wrongful discharge in violation of public policy.[2]  A.R.S. § 23-1501(3)(b) provides that an "employee has a claim against an employer for termination of employment *only if* one or more of the following circumstances have occurred: ... (b) [t]he employer has terminated the employment relationship of an employee in violation of a statute of this state." (emphasis added).  Nowhere in § 23-1501(3)(b) does it grant to a plaintiff a cause of action for terminating an employment relationship in violation of a federal statute.  As a result, Plaintiff cannot base her wrongful discharge claim on "[o]pposing violations of the FMLA protected by 29 U.S.C. § 2615."  Accordingly, Plaintiff's Second and Third Claims for Relief must be dismissed.[3]

### D. Plaintiff's Claims Must Be Dismissed Under FRCP 12(b)(6) Based Upon The Supreme Court's Holdings In *Twombly* And *Iqbal*

Assuming for the sake of argument that any of Plaintiff's claims survive based upon the above arguments in support of complete dismissal, Plaintiff's claims must be dismissed under FRCP 12(b)(6) because the facts and allegations contained in her Complaint do not

---

[2] Having failed to identify the "public policy established by common law in *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370 (1985)," as alleged in her Complaint, this Court should presume that Plaintiff's Third Claim for Relief is duplicative of her Second Claim for Relief.

[3] Plaintiff's wrongful discharge based on age claim also should be dismissed because there is nothing to suggest in Plaintiff's Complaint that she was over the age of 40 during the relevant time period.  A.R.S. § 41-1465 (stating that the statute's "age discrimination prohibitions ... are limited to individuals who are at least forty years of age").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-7-

meet the pleadings standards articulated in *Twombly* and *Iqbal*.

### 1.     The FRCP 12(b)(6) Standard of *Twombly* and *Iqbal*

In considering a motion to dismiss under FRCP 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint offers nothing "more than labels and conclusions" – "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 570, 555. Although *Twombly* was decided in the antitrust context, the Supreme Court recently made clear in *Iqbal* that its pleadings standards apply in all civil actions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions,' and it applies to antitrust and discrimination suits alike") (citation omitted).

"[T]he pleading standard [FRCP] 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 1949 (quoting *Twombly*, 550 U.S. at 555). A complaint that offers "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 557).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. (quoting *Twombly*, 550 U.S. at 570, 556, 557) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-8-

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.") "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.

### 2. Plaintiff's Complaint Does Not Meet The Pleading Requirements In FRCP 8

Plaintiff's Complaint as a whole completely fails to meet the pleading requirements set forth in FRCP 8 or the Supreme Court's recent teachings on the sufficiency of pleadings in *Twombly* and *Iqbal*. In fact, Plaintiff's Complaint is nothing more than an unadorned "six-Defendants-unlawfully-harmed-me" accusation. Briefly stated, and for the reasons set forth below, dismissal under FRCP 12(b)(6) is warranted for the simple reason that she did not "nudge[ ] [her] claims across the line from conceivable to plausible" to survive a motion to dismiss. *See Twombly*, 550 U.S. at 570.

#### a. Plaintiff's Intentional Infliction of Emotional Distress Claim Does Not Plead Sufficient Facts To Support The Elements Of The Tort

Plaintiff's claim for intentional infliction of emotional distress (<u>Seventh Claim for Relief</u>) must be dismissed because she fails to allege facts sufficient to meet all of the elements for such a claim. Specifically, although she alleges that Defendants' conduct was "intentional," she does not allege that any of the Defendants "intend[ed] to cause emotional distress." *See Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 78 (1986). By way of example, the mere fact that a defendant intends to assault a plaintiff does not necessarily mean that the defendant intended to cause emotional distress to the plaintiff. Plaintiff makes no such allegation and does not even provide any facts on which to base such a conclusion. This claim should be dismissed against all Defendants.

This claim also should be dismissed against Defendants for the simple reason that the alleged conduct that Plaintiff attributes to them is insufficient as a matter of law to meet the high standard for proving a claim for intentional infliction of emotional distress. In

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-9-

attempting to bring this claim against Defendants, Plaintiff must prove, among other things, that each and every one of them engaged in extreme and outrageous conduct. *See Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 199, 888 P.2d 1375 (App. 1984). In order to satisfy this element, "[a] plaintiff must show that the defendant's acts were 'so outrageous in character and so extreme a degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Mintz v. Bell Atl. Sys. Leasing, Int'l*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (App. 1995). Even when a defendant's conduct is wrongful and unjustifiable, it does not necessarily rise to the level of "atrocious" beyond all possible bounds of decency such that it would cause an average member of the community to believe that it was extreme or outrageous. *Nelson*, 181 Ariz. at 199. As the Court of Appeals explained in *Mintz*, "it is extremely rare to find conduct in the employment context that would rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz*, 183 Ariz. at 554.

Several cases illustrate just how difficult it is to establish extreme and outrageous conduct in the employment context. In *Mintz*, for example, after failing to receive an expected promotion, the plaintiff was hospitalized for severe emotional and psychological problems and began receiving short-term disability benefits. Approximately three months later, her employer stopped her disability benefits and directed her to return to work, although it **knew** that her physician had recommended that she not return to work until several weeks later. When the plaintiff returned to work as ordered, the stress put her back into the hospital the following day. The next day, in spite of the plaintiff's fragile condition, the employer hand-delivered a termination letter to her in the hospital. Although the court specifically noted the employer's apparent callousness and insensitivity, it dismissed her intentional infliction of emotional distress claim on the defendant's motion to dismiss, concluding that "the facts alleged by [the plaintiff] were not sufficiently extreme and outrageous to state a claim against her employer for intentional infliction of emotional distress." *Id.* at 555, 905 P.2d at 564.

LITTLER MENDELSON
A Professional Corporation
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-10-

Similarly, in *Nelson*, the employer called the plaintiff at 2:00 a.m., had armed personnel bring him to the lobby, and fired him in front of the news media that it had invited to watch the termination. The court held that this conduct was insufficiently extreme and outrageous to support an intentional infliction of emotional distress claim. *Nelson*, 181 Ariz. at 200.

If the facts in *Mintz* and *Nelson* were insufficient to support an intentional infliction claim as a matter of law, Plaintiff's allegations cannot support such a claim, particularly against the individual Defendants, Taylor, White, and Harmes. Indeed, Plaintiff's only allegation against Harmes is that she subjected Plaintiff to harassment and increased scrutiny. By no stretch of the imagination can these allegations be viewed as rising to the level of atrocious conduct necessary to support this claim. As such, this claim should be dismissed against Harmes.

The same holds true for the claims against Taylor and White. Plaintiff's only allegations against them in support of this claim are that they allegedly subjected her to increased scrutiny and terminated her employment. Based on the analysis in *Mintz* and *Nelson* these facts do not, as a matter of law, support a claim for intentional infliction of emotional distress. *See also Gonzales v. Palo Verde Mental Health Svc.*, 162 Ariz. 387, 390-91, 783 P.2d 833, 836-37 (App. 1989) (recognizing there is nothing outrageous about terminating one's employment); *Daniel v. Magma Copper Co.*, 127 Ariz. 320, 324, 620 P.2d 699, 703 (App. 1980) (same). Accordingly, Plaintiff's <u>Seventh Claim for Relief</u> must be dismissed against each and every Defendant as a matter of law.

### b.  Claims Against Defendants As A Group Are Not Sufficiently Pled

Further, each claim against Defendants as a group is not sufficient under *Twombly* or *Iqbal* because it is factually impossible for her to assert eight separate and distinct claims against six separate and distinct defendants. For example, Plaintiff cannot plausibly claim or even prove that ***all*** Defendants wrongfully discharged her (<u>Second</u> and <u>Third Claims for</u>

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-11-

Relief) given that Plaintiff alleged in her Complaint that the Academy, Taylor, and White terminated her employment. Complaint at ¶ 29. Moreover, Plaintiff was never employed by Taylor or White, and nowhere in the Complaint does Plaintiff allege that CRC, Aspen, or Harmes had anything to do with her termination in December 2008. Accordingly, she simply cannot assert a cause of action for wrongful discharge against CRC, Aspen, Taylor, White, and Harmes. Thus, her Second and Third Claims for Relief against them must be dismissed.

Moreover, it is nonsensical for Plaintiff to claim that CRC, Aspen, White, Taylor, and Harmes breached a contract with her when there is no factual allegation whatsoever in her Complaint to support the conclusion that she ever had a contract with any of them. In fact, according to the Complaint, Plaintiff alleges that she had a contract of employment with the Academy, not any of the other Defendants named in this litigation. Complaint at ¶36. Thus, her breach of contract claim (Sixth Claim for Relief) must be dismissed against CRC, Aspen, White, Taylor, and Harmes.

In addition, there are absolutely no allegations in the Complaint whatsoever that CRC or Aspen ever did anything to Plaintiff. As a result, it is hard to imagine how Plaintiff can summarily conclude that CRC or Aspen intended to discharge or retaliate against her (First Claim for Relief), wrongfully discharged her (Second and Third Claims for Relief), retaliated against her (Fourth Claim for Relief), breached a contract that Plaintiff admittedly never had with them (Sixth Claim for Relief) (nor does she allege that either of them intentionally interfered with her alleged contract with the Academy), or ever engaged in any conduct that was "intentional, outrageous, and unconscionable" or intended to harm her in any manner whatsoever (Seventh Claim for Relief).[4] The entire Complaint against CRC and Aspen should be dismissed.

The same holds true for all of the other claims that Plaintiff has asserted against the Defendants as a group. *Twombly* and *Iqbal* require Plaintiff to allege sufficient facts (and not

---

[4] Plaintiff's Fifth Claim for Relief for intentional interference with contract is not asserted against CRC or Aspen.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-12-

legal conclusions) to state a claim against each Defendant (not all Defendants as a whole) as to each cause of action. "In other words, Plaintiff should not plead on the assumption that if she states sufficient facts to support a particular claim against any one defendant that such a pleading will be sufficient for that claim to survive against the other [6] defendants." *See Termini v. Frontier Communications of America, Inc.*, No. 08-8042, 2008 WL 2783276, at *2 fn. 2 (D. Ariz. 2008).

In sum, Plaintiff's shotgun approach at asserting a kitchen sink of claims against six Defendants in hopes that one claim will stick against one Defendant is inconsistent with the Supreme Court's recent teachings in *Iqbal* and *Twombly*. Having completely failed to plead sufficiently under FRCP 8, Plaintiff's Complaint must be dismissed.

## III.   CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety.

DATED this 9th day of September, 2009.

*s/ R. Shawn Oller*
R. Shawn Oller
LITTLER MENDELSON, P.C.
Attorneys for Defendants

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 9th day of September, 2009:

Charles Anthony Shaw, PLLC
140 North Granite Street
Prescott, Arizona 86301
Attorney for Plaintiff

*s/ Linda Bullis*

Firmwide:91863861.3 053964.1016

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-13-